THE STATE OF TEXAS v. THE CHEROKEE MANUFACTURING COMPANY.

No. 122.

1. Mechanic's Lien.—Under the mechanic's lien law of April 5, 1889, it is not necessary that a contractor who furnishes material to a defendant for the erection of improvements, should have a contract in writing to file and record, to secure and fix the lien. It is sufficient if he file for record a sworn account such as is provided for by the fourth section of said act.

2. Same.—The Constitution makes no distinction between those who contract in writing and those who contract by parol; and the statute provides for fixing and enforcing liens claimed under either a written or verbal contract; but it does not require that the contract be in writing, when made between an original contractor and the owner of the property, for furnishing materials or labor.

APPEAL from Cherokee.    Tried below before Hon. GEO. F. INGRAHAM.

*M. J. Whitman* and *McClure & Gibson*, for appellant.—There is no material difference between the Act of 1889 and any previous mechanic's lien law, unless it be that each succeeding law has enlarged the speedy and efficient enforcement of said liens. Under former acts, when the law was more restricted than now, the courts sustained liens when there was only a verbal contract. Sayles' Civ. Stats., arts. 3165, 3166, 3967; Gillespie v. Remington, 66 Texas, 110; Pool v. Wedemeyer, 56 Texas, 287; Stuart v. Broome, 59 Texas, 466; Webb v. Koger, 14 S. W. Rep., 238; Bassett v. Bowen, 12 S. W. Rep., 205.

PLEASANTS, ASSOCIATE JUSTICE.—This suit was brought on open account for work done and material furnished by appellant to appellee. The petition set out an itemized account of material furnished by the financial agent of the two penitentiaries owned by the State to the Cherokee Iron Manufacturing Company, a corporation chartered under the laws of Texas, and domiciled in Cherokee County. The account runs from February 16, 1891, to January 13, 1892, and consists of machinery, iron, wood, water pipes, tools, engines, and various other articles manufactured both of wood and metal. The account aggregated the sum of $22,189.60, and showed credits to the amount of $15,134.19. This account was sworn to, and duly filed and recorded in book of mechanics' liens, in the county clerk's office of Cherokee County on the 21st day of January, 1892.

The petition prayed for judgment for the balance still due on the account, to-wit, the sum of $7055 41, with legal interest. The petition further averred, that the articles named in said account were furnished by the appellant, through its duly and legally authorized agents, to the appellee, under contract with it to furnish material for the erection of the furnace owned and operated by the appellee at New Birmingham, in the said county of Cherokee, and that said articles so furnished were used

by the appellee in building and operating said furnace. The lot upon which the furnace is situated is fully described in the petition, and prayer is made for decree foreclosing lien upon said lot, its improvements, and fixtures.

To this petition the defendant in the court below filed the following demurrers:

" Now comes the defendant in the above entitled and numbered cause, and excepting to the plaintiff's petition filed herein April 19, 1892, says the same is wholly insufficient in law; and of this prays the judgment of the court. Specially excepting to all that part of said petition which attempts to set up and claim a mechanic's or material man's lien on property therein described, defendant says the same is insufficient in the following particulars:

" 1. It appears from said petition and the exhibit thereto attached, that plaintiff claims said lien under a contract alleged to have been entered into with defendant, but it does not appear therefrom that said contract is not in writing, nor are such facts stated therein as entitle plaintiff to the lien claimed if said contract is not in writing.

" 2. It appears from said petition and the exhibit thereto attached, that plaintiff claims said lien under a contract alleged to have been entered into with defendant, but it does not appear therefrom that such contract is in writing, and if it is, that the requirements of the law necessary to fix such lien thereunder have been complied with. Of this the defendant prays the judgment of the court."

The demurrers were sustained, and plaintiff excepted. The defendant admitted an indebtedness of $5327.69, which was accepted as correct by plaintiff, and judgment was rendered for that sum, but without a decree establishing and foreclosing a lien upon the property of defendant. A motion for a new trial was made by the plaintiff, which was refused, and the State gave notice of appeal.

The law upon which the appellant bases its right to a lien is that contained in section 37 of article 16 of the Constitution of the State, and the act of the Legislature entitled "An act to provide for the speedy and efficient enforcement of the liens of mechanics, contractors, subcontractors, builders, laborers, and material men, and to repeal all existing laws and parts of laws in conflict with the provisions of this act," and approved April 5, 1889. The first section of this act is in these words:

" Section 1. Be it enacted by the Legislature of the State of Texas: That any person or firm, lumber dealer, artisan, laborer, mechanic, or subcontractor who may labor or furnish material, machinery, fixtures, or tools to erect any house or improvement, or to repair any building or improvement whatever, under or by virtue of contract with the owner or his agent, trustee, contractor, or contractors, upon complying with the provisions of this act shall have a lien upon such house, building, fixtures,

or improvements, and shall also have a lien on the lot or lots of land necessarily connected therewith, to secure payment for labor done, lumber, material, machinery, or fixtures and tools furnished for construction or repair.''

The second section of the act requires that any original contractor desiring to avail himself of its benefits, shall file within four months after the indebtedness shall have accrued his contract in the office of the county clerk of the county in which the property on which a lien is sought to be established is situate, and cause the same to be recorded in a book to be kept by the clerk for that purpose. This section requires this to be done by a journeyman, day-laborer, or other person seeking to establish a lien, within thirty days after the accrual of his indebtedness, with the proviso, that if such journeyman, day-laborer, or other person have no written contract, it shall be sufficient for him to file an itemized account of his claim, supported by affidavit, showing that the account is just and correct, and that all just and lawful offsets, payments, and credits known to affiant have been allowed.

Section 4 of the act is as follows:  '' If there be no written contract, it shall be the duty of the person seeking to obtain the benefits of this act to deliver to the clerk of the County Court a sworn account as provided for in sections 2 and 3, to be filed and recorded as therein provided; and in such case, when the labor is performed for or the material is furnished to the owner of the building or improvement, the following form may be used, and will be sufficient to fix the lien contemplated by this act:

''*The State of Texas,* ——— *County.*—A. B., affiant, makes oath and says, that the annexed is a true and correct account of the labor performed (or material furnished) C. D., of ——— County, Texas, and that the prices thereof as set forth in said account hereto annexed are just and reasonable, and the same is unpaid; that said labor was performed (or material furnished, or both) for said C. D. at the time in said account mentioned, under and by virtue of a contract between affiant and C. D., and that due notice was given by affiant of the labor performed or material furnished, in accordance with section 3; and affiant further makes oath and says, that he is informed and believes that C. D. was at the time said contract was made and entered into and said labor was performed (or material furnished) the owner of the house or improvements described as follows (here describe the house or improvements), and that said house (or improvements) is situated upon a certain lot or tract of land which affiant is informed is owned by C. D., and which is described as follows (here describe the lot or tract of land); and this affiant claims a lien upon said house (or improvements) and upon said land; provided, however, a substantial compliance with the above form shall be deemed sufficient.''

There is no appearance for the appellee in this court, and the record does not disclose the grounds upon which the judgment of the court sus-

taining the demurrers to the petition is based; but we infer that the court held that a material man's lien could not be enforced by an original contractor unless the contract be in writing. We do not think the sections of the Act of April 5, 1889, which we have quoted above, will admit of this construction. But if the court sustained the demurrers because the petition did not show that the contract between the plaintiff and the appellee was not in writing, we are of the opinion that the petition by its averments, with its exhibit and the attached affidavit, does show that the contract was in parol and not in writing.

We have inspected carefully the pleadings of both the plaintiff and defendant, and we find that the petition avers every fact required by the statute for fixing and establishing a material man's lien.

The Constitution gives the lien, and the office of the statute is simply to prescribe the mode in which such lien is to be fixed and secured.

The Constitution makes no distinction between those who contract in writing and those who contract by parol; and the statute provides for fixing and enforcing liens claimed under either a written or a verbal contract; but it does not require that the contract must be in writing when made between an original contractor and the owner of the property, for furnishing material or labor.

The judgment of the lower court is reversed and remanded.

*Reversed and remanded.*

Delivered March 30, 1893.